IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

BRYAN MICHAEL BENNETT,

       Plaintiff,

v.                        CASE NO. 2:08-cv-00147

MICHAEL J. ASTRUE,
Commissioner of Social Security,

       Defendant.

### PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for disability insurance benefits ("DIB") and supplemental security income ("SSI"), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f.  By standing order, this case was referred to this United States Magistrate Judge to consider the pleadings and evidence, and to submit proposed findings of fact and recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B).

Plaintiff, Bryan Michael Bennett (hereinafter referred to as "Claimant"), filed applications for SSI and DIB on December 15, 2004, alleging disability as of August 15, 2004, due to AIDS.  (Tr. at 92-95, 513-15, 163.)  The claims were denied initially and upon reconsideration.  (Tr. at 79-81, 84-86, 517-19, 521-23.)  On January 6, 2006, Claimant requested a hearing before an

Administrative Law Judge ("ALJ").  (Tr. at 87.)  The hearing was held on August 25, 2006, before the Honorable John Murdock.  (Tr. at 42-76.)  By decision dated March 15, 2007, the ALJ determined that Claimant was not entitled to benefits.  (Tr. at 19-33.)  The ALJ's decision became the final decision of the Commissioner on January 11, 2008, when the Appeals Council denied Claimant's request for review.  (Tr. at 5-8.)  On March 5, 2008, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability.  See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972).  A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims.  20 C.F.R. §§ 404.1520, 416.920 (2007).  If an individual is found "not disabled" at any step, further inquiry is unnecessary.  Id. §§ 404.1520(a), 416.920(a).  The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment.  Id. §§ 404.1520(b), 416.920(b).  If the claimant is

2

not, the second inquiry is whether claimant suffers from a severe impairment.  Id. §§ 404.1520(c), 416.920(c).  If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4.  Id. §§ 404.1520(d), 416.920(d).  If it does, the claimant is found disabled and awarded benefits.  Id.  If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work.  Id. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability.  Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).  The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience.  20 C.F.R. §§ 404.1520(f), 416.920(f) (2007).  The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant

3

satisfied the first inquiry because although he was working part-time, it did not rise to the level of substantial gainful activity. (Tr. at 21-22.)  Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of HIV infections, Wolff-Parkinson-White syndrome, hepatitis B and major depressive disorder.  (Tr. at 22.)  At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1.  (Tr. at 22.)  The ALJ then found that Claimant has a residual functional capacity for light work, reduced by nonexertional limitations.  (Tr. at 25.)  As a result, Claimant can return to his past relevant work.  (Tr. at 32.)  On this basis, benefits were denied.  (Tr. at 33.)

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence.   In Blalock v. Richardson, substantial evidence was defined as

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Cellebreze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with

4

resolving conflicts in the evidence. <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

<u>Claimant's Background</u>

Claimant was almost thirty-one years old at the time of the administrative hearing. (Tr. at 44.) Claimant graduated from high school. (Tr. at 45.) In the past, Claimant worked in a number of fast food restaurants and in the deli of a grocery store. Most recently, Claimant worked as a cashier for a fast food restaurant, and, at the time of hearing, continued to work ten to fifteen hours per week at this job. (Tr. at 45, 48-49, 51-52.)

<u>The Medical Record</u>

The court has reviewed all evidence of record, including the medical evidence of record, and will summarize it briefly below.

Claimant's school records indicate he received mostly Bs and Cs with some As and Ds. (Tr. at 183.) In 1990, while in the eighth grade, Claimant took the WISC-R and attained a verbal IQ score of 94, a performance IQ score of 114 and a full scale IQ score of 102, placing Claimant in the average range of ability.

5

(Tr. at 191.)

The record includes treatment notes and other evidence from Charleston Area Medical Center ("CAMC"). On September 11, 2003, Claimant had midepigastric pain after drinking alcohol and eating fatty food. Claimant had a history of Wolff-Parkinson-White syndrome[1], and came in because he thought it might be related to his heart. Claimant was not taking any medication for this condition. (Tr. at 383.) Claimant was diagnosed with symptomatic cholelithiasis/chronic cholecystitis and on September 23, 2003, underwent laparoscopic cholecystectomy and umbilical hernia repair. (Tr. at 298, 383.)

In August of 2004, Claimant tested positive for HIV (Tr. at 216) and hepatitis B (Tr. at 221).

The record includes treatment notes from Sandra Elliott, M.D. On August 27, 2004, Claimant reported a history of drug and alcohol abuse. (Tr. at 234.) On September 8, 2004, Dr. Elliott noted that Claimant had a fever and rash, which was likely related to his HIV drugs. (Tr. at 232.)

On September 10, 2004, Claimant reported to the emergency room at CAMC with complaints of cough and fever after having been diagnosed with HIV two months earlier. Claimant was not on any

---

[1] "Wolff-Parkinson-White syndrome is a condition characterized by abnormal electrical pathways in the heart that cause a disruption of the heart's normal rhythm (arrhythmia)." http://www.medicinenet.com/wolff-parkinson-white_syndrome/article.htm . Symptoms may include "an abnormally fast heartbeat (tachycardia) and other arrhythmias." Id.

treatment, but was started on Combivir and Kaletra.  (Tr. at 366.)
Claimant was diagnosed with HIV, cough and sputum, pancytopenia,
chronic diarrhea, Wolff-Parkinson-White syndrome, and high
transaminase.  (Tr. at 363.)  On September 11, 2004, Dr. Elliott
examined Claimant in consultation with the examining physician.
(Tr. at 367.)

On September 22, 2004, Claimant reported to Dr. Elliott that
he developed a rash after taking an antibiotic.  (Tr. at 232.)

On October 3, 2004, Claimant reported to the emergency room at
CAMC with a fever and rash.  The diagnosis was acute febrile
illness, diarrhea, dehydration and immunodeficiency.  (Tr. at 360.)
Dr. Elliott examined Claimant in consultation with the examining
physician.  (Tr. at 361.)  Claimant was discharged on October 6,
2004.  (Tr. at 358.)

On November 30, 2004, Claimant was admitted to CAMC after an
attempted drug overdose.  Claimant reported a history of
psychological problems, including one overdose and one suicide
attempt.  Claimant reported that until the last month, he had been
relatively free of depressive symptoms on Lexapro, but had since
experienced depressed mood for about a month.  Claimant had taken
30 Lexapro and alcohol after an altercation with a significant
other.  (Tr. at 337, 340.)  Claimant was diagnosed with major
depression, recurrent, severe with suicidal attempt and ETOH
dependence and THC abuse on Axis I.  (Tr. at 339.)  Dr. Elliott

7

examined Claimant in consultation with the examining physician. (Tr. at 346.) At discharge on December 3, 2004, Claimant's GAF was 71-80. (Tr. at 339.)

On December 20, 2004, treatment notes from Dr. Elliott indicate that Claimant was seen in the hospital for a suicide attempt. Claimant was doing well after resuming use of Lexapro, but reported he had been drinking alcohol. (Tr. at 231.) Dr. Elliott referred Claimant to Alcoholics Anonymous and for counseling. (Tr. at 231.)

Claimant reported to the emergency room at CAMC on February 24, 2005, with complaints of tingling and diarrhea. There was no known etiology for Claimant's tingling, and the emergency room physician felt that Claimant's symptoms may be more related to anxiety. (Tr. at 325.) On February 24, 2005, Claimant underwent a head CT scan, which was negative. (Tr. at 328.)

On March 10, 2005, a progress note authored by Dr. Elliott indicated Claimant's diagnoses of AIDS, depression, multisubstance abuse and ETOH and parathesis and that Claimant needed to have regular visits with a psychologist. (Tr. at 482.)

On March 19, 2005, Claimant reported to the emergency room with complaints of perianal pain and occasional rectal bleeding. Claimant was diagnosed with perianal pain with history of bleeding, question hemorrhoids and HIV positive by history. (Tr. at 311.)

8

On March 29, 2005, Scott Spaulding, M.A. examined Claimant at the request of the State disability determination service. Claimant reported that he is under treatment for a lung infection, depression and AIDS.  Claimant reported a history of drug and alcohol abuse, including marijuana, coke, crack and alcohol. Claimant last used coke and crack in September of 2004.  Claimant reported that he currently used marijuana three times per month and last drank one month before the examination.  (Tr. at 399.) Claimant's mood was solemn and his affect was constricted. Claimant's psychomotor activity was decreased, and Claimant was lethargic.  Judgment and insight were within normal limits. Immediate memory and remote memory were within normal limits. Delayed memory was severely deficient.  Attention and concentration were within normal limits.  Social functioning was within normal limits.  Mr. Spaulding diagnosed major depressive disorder, recurrent, severe per history, alcohol dependence, per history, THC abuse, per history, and cannabis abuse on Axis I.  He made no Axis II diagnosis.  (Tr. at 400.)

On March 31, 2005, Claimant underwent a brain MRI, which was essentially negative with minimal fluid in the right mastoid air cells.  (Tr. at 391.)

On April 7, 2005, Nilima Bhirud, M.D. examined Claimant at the request of the State disability determination service.  Claimant reported chronic diarrhea.  (Tr. at 402.)  Dr. Bhirud's examination

was largely normal.  Dr. Bhirud stated that Claimant "has history of HIV that was diagnosed in September of 2004.  He has a history of alcohol and drug abuse in the past.  He feels tired all the time.  He says his blood count stays low.  He is being followed by HIV clinic at CAMC."  (Tr. at 404.)

On April 20, 2005, Claimant reported to the emergency room at CAMC with complaints of near syncope on two occasions.  (Tr. at 388.)  It appears the remaining pages of this report are not contained in the record.  (Tr. at 388.)

On April 26, 2005, R. L. Go-Lee, M.D., a State agency medical source, completed a Physical Residual Functional Capacity Assessment and opined that Claimant was limited to sedentary work, with an ability to stand and/or walk less than two hours in an eight-hour workday, with an inability to climb ladders, ropes and scaffolds and crawl, an  occasional ability to climb, stoop, kneel, and crouch, and a need to avoid concentrated exposure to extreme cold and heat and a need to avoid even moderate exposure to vibration, fumes, odors, dusts, gases, poor ventilation and hazards.  (Tr. at 407-12.)

On April 30, 2005, Debra Lilly, Ph.D., a State agency medical source, completed a Psychiatric Review Technique form on which she opined that Claimant's mental impairments, affective disorders and substance addiction disorders, were not severe.  (Tr. at 417-30.)  Dr. Lilly opined that Claimant had mild limitation in activities of

daily living, maintaining social functioning and maintaining concentration, persistence and pace, and one or two episodes of decompensation, each of extended duration. (Tr. at 427.) This finding was affirmed by Robert Solomon, Ph.D. on November 4, 2005. (Tr. at 417.)

On May 21, 2005, a treatment note from Dr. Elliott indicated Claimant's diagnoses of HIV and depression/anxiety and syncope episodes. Claimant had not yet had an appointment with a psychologist. (Tr. at 480.)

On May 31, 2005, a State agency medical source whose name is illegible, indicated disagreement with the opinion of Dr. Lilly on the Psychiatric Review Technique form to the extent she opined that Claimant had two episodes of decompensation. (Tr. at 432.)

On June 23, 2005, Ronald E. Rossman, M.D., a State agency medical source, completed a Medical Consultant's Review of Physical Residual Functional Capacity assessment and stated that he disagreed with the exertional, postural and environmental limitations opined by Dr. Go-Lee. He opined that "[t]he reported hemoglobin/hematocrit levels do not support the presence of severe chronic anemia. The physical examination (3/30/05 CE) is normal. Such objective medical evidence supports an RFC of lift/carry 20/10 lbs. and stand/work at least 2 hrs/day. Postural limitations are all occasional except for ladder/rope/scaffolds = Never. There are no environmental limitations. The discussion of symptoms is

11

amended as above." (Tr. at 415.) Dr. Rossman completed a case analysis reaching similar results on May 23, 2005. (Tr. at 431.)

On July 5, 2005, David Scheid, a vocational specialist, completed a vocational assessment on which he opined that Claimant's revised residual functional capacity assessment as opined by Dr. Rossman was compatible with a narrow range of light work. (Tr. at 434-35.)

On August 1, 2005, Dr. Go-Lee completed a second Physical Residual Functional Capacity Assessment on which he opined that Claimant could perform light work, stand and/or walk at least two hours in an eight-hour day, occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl, never climb ladders, ropes or scaffolds, and avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation and hazards. (Tr. at 437-44.)

On August 2, 2005, Dr. Lilly completed a second Psychiatric Review Technique form on which she opined that Claimant's mental impairments, affective disorders and substance addiction disorders, were not severe. (Tr. at 445-57.) Dr. Lilly opined that Claimant had mild limitations in activities of daily living, maintaining social functioning and maintaining concentration, persistence and pace, and one or two episodes of decompensation, each of extended duration. (Tr. at 455.) This finding was affirmed by Robert Solomon, Ph.D. on November 4, 2005. (Tr. at 445.)

On October 28, 2005, Claimant reported to Urgent Care with a

12

rash all over his body.  (Tr. at 461.)

On February 23, 2006, Dr. Elliott noted that Claimant was still having problems and was unable to have people close to him. Claimant was not on psychiatric medication. Claimant was noncompliant with his AIDS medications, and Dr. Elliott stressed the importance of taking his medication on a regular basis.  Dr. Elliott noted that Claimant was diagnosed as bipolar by another source, but Claimant did not know the name of the source.  In her diagnoses, Dr. Elliott mentioned diagnoses of bipolar disorder and anxiety disorder and indicated that Claimant needed a psychiatric referral for both.  (Tr. at 476.)

A note dated February 27, 2006, from Oscar Estabella, M.D. states that Claimant had a "markedly decreased absolute number of CD4+ T-cells consistent with a severely depressed cell mediated immunity.  In comparison with studies done on 2/15/05, the absolute number of T4 cells has decreased from 172 to 65 cells."  (Tr. at 486.)

On March 21, 2006, Claimant reported to Urgent Care with complaints that his eyes and skin were turning yellow and that he had blisters in his throat.  Claimant had recently begun taking new medication.  Claimant was instructed to stop taking his medication and see his treating physician, Dr. Elliott.  (Tr. at 459.)

On March 23, 2006, Dr. Elliott noted that Claimant had an appointment with Dr. Wilhelm, presumably a psychiatrist, but that

13

Claimant was unable to attend because he could not get a ride and was afraid to ride the bus.  Claimant felt that his depression was worse.  Claimant's diagnoses included depression, anxiety, and suicidal ideation.  (Tr. at 479.)  Dr. Elliott opined that Claimant needed a therapy referral.  (Tr. at 479.)

On April 27, 2006, Dr. Elliott noted that Claimant was off all medication.  Her diagnoses included bipolar disorder and AIDS, among others.  (Tr. at 477.)  Claimant had not seen a psychologist. (Tr. at 477.)

On August 7, 2006, Miranda N. Dunlap, M.A., supervised by Mareda L. Reynolds, M.A., examined Claimant at the request of his counsel.  Claimant reported past mental health treatment as a child and teenager, but was not currently receiving ongoing mental health treatment.  (Tr. at 466.)  Claimant's social interaction was mildly deficient.  He was alert and oriented and his mood was dysphoric. His affect was mildly constricted by appropriate to expressed ideas.  Claimant's insight was fair, and his judgment was adequate. Claimant's immediate memory was moderately deficient, his recent memory was markedly deficient and his remote memory was fair. Attention and concentration were mildly deficient.  Psychomotor activity was slowed.  (Tr. at 468-69.)  On the WAIS-III, Claimant attained a verbal IQ score of 76, a performance IQ score of 87 and a full scale IQ score of 80.  The results were valid.  (Tr. at 469.)  Ms. Reynolds diagnosed major depressive disorder, recurrent,

14

moderate, anxiety disorder, not otherwise specified, cognitive disorder, not otherwise specified on Axis I.  She made no Axis II diagnosis.  She rated Claimant's GAF at 50.  (Tr. at 471.)

Ms. Reynolds and Ms. Dunlap completed a Mental Impairment Questionnaire on which they rated Claimant's abilities as moderately to markedly limited in most categories.  (Tr. at 473-75.)

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because (1) the ALJ erred in evaluating Claimant's subjective complaints; (2) the ALJ failed to consider the combined effect of Claimant's impairments;  and (3) Claimant meets Listings 14.08(N) and 12.02(A)(7)(B) and (C). (Pl.'s Br. at 2-12.)

The Commissioner argues that (1) substantial evidence supports the ALJ's finding that Claimant's subjective complaints were not entirely credible; and (2) substantial evidence supports the ALJ's finding that Claimant does not meet Listings 14.08(N) or 12.02(A)(7)(B) or (C).  (Def.'s Br. at 11-20.)

Credibility Analysis

Claimant first argues that the ALJ erred in assessing Claimant's subjective complaints.  Claimant asserts that the record completely supports Claimant's complaints of weakness, fatigue and limitations resulting from his physical and mental impairments.

(Pl.'s Br. at 4-5.)  Claimant further asserts that Dr. Go-Lee (Tr. at 407-14) and Dr. Lilly (417-30), two State agency sources, opined that Claimant was "indeed credible on two separate occasions." (Pl.'s Br. at 6.)

The court proposes that the presiding District Judge find that the ALJ's pain and credibility findings are consistent with the applicable regulations, case law and social security ruling ("SSR") and are supported by substantial evidence.  20 C.F.R. §§ 404.1529(b) and 416.929(b) (2007); SSR 96-7p, 1996 WL 374186 (July 2, 1996); Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996).  In his decision, the ALJ determined that Claimant had medically determinable impairments that could reasonably be expected to cause Claimant's alleged symptoms.  (Tr. at 31.) The ALJ's decision contains a thorough consideration of Claimant's daily activities, the location, duration, frequency, and intensity of Claimant's pain, precipitating and aggravating factors and Claimant's medication.  (Tr. at 26-31.)

The ALJ considered Claimant's testimony that he gets tired sometimes and has to clock out and rest at his part time job and sometimes has to take off a week or two of work.  The Claimant testified that he walks to work.  Regarding his mental condition, the ALJ noted Claimant's testimony that he has attempted suicide in the past and was admitted to a psychiatric ward.  The ALJ noted that Claimant has Wolff-Parkinson-White syndrome manifested by

16

occasional episodes of tachycardia, but received no treatment and alleges no limitations for this condition other than some tiredness.  Regarding his hepatitis B diagnosis, the ALJ observed that Claimant is receiving no treatment.  (Tr. at 26.)  The ALJ acknowledged that Claimant is taking several anti-viral medications for HIV and has been treated for a rash caused by his medications. (Tr. at 26.)

The ALJ concluded that Claimant's

statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.  The claimant has described daily activities which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations; additionally, he lives alone and does not describe any particular help in maintaining his household.  A review of the claimant's work history, as well as the claimant's own testimony, indicates he worked intermittently prior to the alleged disability onset date, has never ha[d] substantial earnings, and has always received financial help from his parents to pay his bills, which raises a question as to whether the claimant's continuing part-time employment is actually due to medical impairments.  While the objective medical evidence shows the claimant's activities as set out in the residual functional capacity above, the claimant has had relatively minor complications from the HIV infection, such as some nausea, vomiting, diarrhea, and rashes; but no opportunistic infections, e.g., toxoplasmosis of the brain or pneumocystis carinii pneumonia.  The claimant has normal physical examinations with normal range of motion of his extremities; unremarkable x-rays, CT scans, and MRIs; essentially normal blood work with only mild anemia; and his hospitalizations have been primarily prophylactic.

As to the claimant's mental condition, two State Agency consultants opined his depression abates when he stops his admitted abuse of alcohol and marijuana; this is supported in part by the GAF of 71-80 assessed upon discharge from his psychiatric hospitalization, after

17

four days free of substance abuse. However,
pretermitting a decision on the issue of whether the
claimant's substance abuse is material to a finding of
disability, the claimant has few work-related limitations
for depression. The claimant contends he has been
depressed for years, yet he has worked despite
depression, at times performing substantial gainful
activity full-time. Moreover, there is evidence that the
claimant has not sought continuing psychological or
psychiatric treatment and has not been entirely compliant
in taking his prescribed psychotropic medications
(Exhibit 18F, pages 3-4), which suggests that the
symptoms of depression may not have been as limiting as
the claimant has alleged in connection with this
application and appeal.

Therefore, the undersigned has reduced the claimant's
residual functional capacity to light work with some few
moderate psychological limitations, as set out above.

(Tr. at 32.) Specifically, the ALJ concluded that Claimant was
limited to light work, reduced by a moderate limitation in the
ability to understand, remember and carry out detailed
instructions. (Tr. at 25.)

Contrary to Claimant's assertions, the ALJ provides an in
depth and well reasoned explanation as to why he found Claimant's
subjective complaints not entirely credible. The ALJ relied on a
number of factors including Claimant's daily activities (living
independently and working part-time); the objective medical
evidence of record indicating that while Claimant's physical
impairments cause some limitations, Claimant has had relatively
minor complications from the HIV; that Claimant has worked despite
his depression; and Claimant has not sought mental health treatment
or been entirely compliant with his prescribed psychotropic

18

medications.  (Tr. at 32.)

The ALJ's findings as to why Claimant is not entirely credible are supported by substantial evidence.  Claimant was able to work part-time and the medical evidence of record does indicate relatively minor complications related to Claimant's HIV.  Most importantly, the substantial evidence of record indicates that Claimant was not compliant with medication or in seeking mental health treatment such as counseling.  Dr. Elliott recommended several times that Claimant see a psychologist, but Claimant apparently has not followed through.

Claimant asserts that two State agency sources, Dr. Go-Lee (Tr. at 407-14) and Dr. Lilly (417-30), opined that Claimant was credible.  In addition, Claimant asserts that Dr. Lilly found that Claimant had suffered two episodes of decompensation, but that the ALJ found that Claimant had not suffered episodes of decompensation.  (Pl.'s Br. at 6.)

Dr. Go-Lee first opined on April 26, 2005, that Claimant's symptoms were generally credible and that he was capable of less than a full range of sedentary work.  (Tr. at 412.)  A second State agency source, Dr. Rossman, disagreed with Dr. Go-Lee's findings, noting in particular, that the medical evidence of record does not support severe anemia.  (Tr. at 415.)  Dr. Go-Lee completed a second Physical Residual Functional Capacity Assessment on August 2, 2005, and opined that Claimant could perform light work with

some nonexertional limitations. (Tr. at 437-44.) The ALJ explained in his decision that he afforded no weight to the first opinion of Dr. Go-Lee because the opinion was not supported by the remaining substantial evidence of record. (Tr. at 32.) The ALJ's decision in this regard is supported by substantial evidence, particularly in light of Dr. Go-Lee's subsequent change in his opinion, a change that is more consistent with the substantial medical evidence of record.

The court will address Dr. Lilly's findings and the weight afforded thereto below, but notes that Dr. Lilly ultimately opined on two occasions that Claimant's mental impairments were not severe.

Based on the above, the court proposes that the presiding District Judge find that substantial evidence support the ALJ's credibility analysis.

Combination

Next, Claimant argues that the ALJ failed to consider his impairments in combination. (Pl.'s Br. at 5-6, 8-9.) Claimant's argument in this regard is mostly boilerplate and does not specifically address the specifics of how this ALJ failed to consider Claimant's combined impairments.

The court proposes that the presiding District Judge find that the ALJ adequately considered Claimant's impairments alone and in combination in keeping with 20 C.F.R. §§ 404.1523 and 416.923

(2007).  The ALJ's decision reflects a careful consideration of all of Claimant's impairments and their combined effect.  In his decision, the ALJ stated that Claimant's impairments, both alone and in combination, including those deemed nonsevere, did not meet or equal a listing.  (Tr. at 22.)  Elsewhere in his decision, including in his analysis of Claimant's residual functional capacity and in assessing Claimant's subjective complaints, the ALJ's decision reflects a careful consideration of Claimant's combined impairments.

<u>Listings 14.08(N) and 12.02(A)</u>

Finally, Claimant argues that he meets Listings 14.08(N) and 12.02(A)(7)(B) or (C).  Claimant also suggests that the ALJ should have called a medical expert to testify about Claimant's mental condition.  (Pl.'s Br. at 10-11.)

Listing 14.08(N) "establishes standards for evaluating manifestations of HIV infection that do not meet the requirements listed in 14.08A-M."  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 14.00(D)(8) (2007).  Listing 14.08(N) provides as follows:

> *14.08 Human immunodeficiency virus (HIV) infection.* With documentation as described in 14.00D3 and one of the following:
> ***
> N.  Repeated (as defined in 14.00D8) manifestations of HIV infection (including those listed in 14.08 A-M, but without the requisite findings, e.g., carcinoma of the cervix not meeting the criteria in 14.08E, diarrhea not meeting the criteria in 14.08J, or other manifestations, e.g., oral hairy leukoplakia, myositis) resulting in significant, documented symptoms or signs (e.g., fatigue, fever, malaise, weight loss, pain, night sweats) and one

21

of the following at the marked level (as described in 1400D8):
1.  Restriction of activities of daily living;
2.  Difficulties in maintaining social functioning;
3.  Difficulties in completing tasks in a timely manner due to deficiencies in concentration, persistence or pace.

Id. at § 14.08(N).

In his decision, the ALJ acknowledged the argument of Claimant that he meets this listing because he is HIV positive and has marked limitations in completing tasks in a timely manner due to deficiencies in concentration, persistence and pace.  In his argument to the ALJ, Claimant relied on the report of Ms. Reynolds and Ms. Dunlap and Claimant's school records, which state that at age six, Claimant had poor attention or short attention span and failed to complete work assignments.  (Tr. at 23.)

The ALJ stated that he had considered these arguments, but determined that Claimant does not meet Listing 14.08(N), noting that in assessing Claimant's abilities in the four broad areas of functioning set out in the regulations, Claimant has mild restriction of activities of daily living, mild difficulties maintaining social functioning, moderate difficulties maintaining concentration, persistence and pace and no episodes of decompensation.  (Tr. at 23.)  The ALJ explains further in his decision, his reasons for each of these findings.  (Tr. at 23-24.)

Regarding deficiencies in concentration, persistence and pace, in particular, the ALJ acknowledged that during the examination by

22

Ms. Reynolds and Ms. Dunlap, Claimant had severely deficient delayed memory, however, immediate memory, remote memory and attention, concentration and persistence were all within normal limits. (Tr. at 23.)  The ALJ further found that

> [a]lthough in August 2006, Ms. Dunlap characterized the claimant's immediate memory as "moderately deficient", this conflicts with her note, in the same sentence, that the claimant remembered four out of four unrelated items immediately (Exhibit 17F, page 4).  Ms. Dunlap assessed recent memory as markedly deficient, as the claimant remembered one out of four unrelated items after thirty minutes; and remote memory as fair, based on the quality of background information he provided (Exhibit 17F, pages 4-5).  Ms. Dunlap also indicated that attention and concentration are mildly deficient based on the Digit Span subtest of WAIS-III (Exhibit 17F, page 5).

(Tr. at 23-24.)

The court proposes that the presiding District Judge find that substantial evidence supports the ALJ's finding that Claimant does not meet Listing 14.08(N). Even if Claimant meets the introductory section requiring repeated manifestations of HIV infection, he has not shown marked restriction in one of the three areas identified above.  The ALJ provides ample explanation in his decision as to why Claimant does not meet Section 14.08N(3), and the ALJ's findings are supported by substantial evidence.  The ALJ's reasons for discounting the report of Ms. Dunlap and Ms. Reynolds are well reasoned and supported by substantial evidence. Claimant relies on school records when Claimant was six years old, when the current evidence indicates Claimant is able to work part-time.  As such, the ALJ was justified in his reasoning that "such evidence [is] not

probative of a claimant's mental status at age 30." (Tr. at 24.)
Furthermore, other substantial evidence of record from examining
and nonexamining sources, such as Mr. Spaulding and Dr. Lilly,
supports a finding that Claimant does not meet or equal Listing
14.08(N).

Claimant's argument that the ALJ should have called a medical
expert to testify about Claimant's mental condition is not
convincing.

It is Claimant's responsibility to prove to the Commissioner
that he or she is disabled.   20 C.F.R. §§ 404.1512(a) and
416.912(a) (2007).   Thus, Claimant is responsible for providing
medical evidence to the Commissioner showing that he or she has an
impairment.   Id. §§ 404.1512(c) and 416.912(c).   Although the ALJ
has a duty to fully and fairly develop the record, he is not
required to act as plaintiff's counsel.   Clark v. Shalala, 28 F.3d
828, 830-31 (8th Cir. 1994).

The regulations provide that the decision to call a medical
expert at the administrative hearing generally is within the ALJ's
discretion: "[a]dministrative law judges may also ask for and
consider opinions from medical experts on the nature and severity
of your impairment(s) and on whether your impairment(s) equals the
requirements of any listed impairment in appendix 1 to subpart P of
part 404 of this chapter."   20 C.F.R. §§ 404.1527(f)(2)(iii) and
416.927(f)(2)(iii) (2007).

Claimant was represented by counsel in this matter and there was no indication from the hearing transcript that the evidence of record was incomplete.  The record before the ALJ contained adequate evidence with respect to Claimant's mental and physical impairments, and the ALJ did not err in failing to exercise his discretion to call a medical expert.

Regarding Listing 12.02(A)(7)(B) and (C), Claimant asserts that he meets this listing "when proper consideration is given to his psychological and mental impairments clearly demonstrating a loss of 15 points of measured intellectual ability." (Pl.'s Br. at 11.)  Claimant does not cite the evidence to which he refers, but presumably, Claimant is referring to the school records in 1989, showing a verbal IQ of 94, a performance IQ of 114 and a full scale IQ of 102, and scores from Ms. Dunlap and Ms. Reynolds showing a verbal IQ of 76, a performance IQ of 87 and a full scale IQ of 80. (Tr. at 191, 469.)

Listing 12.02 requires:

12.02 *Organic Mental Disorders:* Psychological or behaviorial abnormalities associated with a dysfunction of the brain.  History and physical examination or laboratory tests demonstrate the presence of a specific organic factor judged to be etiologically related to the abnormal mental state and loss of previously acquired functional abilities.
The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.
A.  Demonstration of a loss of specific cognitive abilities or affective changes and the medically documented persistence of at least one of the following:
* * *

25

7.  Loss of measured intellectual ability of at least 15 I.Q. points from premorbid levels or overall impairment index clearly within the severely impaired range on neuropsychological testing, e.g., the Luria-Nebraska, Halstead-Reitan, etc.;

AND

B.  Resulting in at least two of the following:

1.  Marked restriction of activities of daily living; or
2.  Marked difficulties in maintaining social functioning; or
3.  Marked difficulties in maintaining concentration, persistence or pace; or
4.  Repeated episodes of decompensation, each of extended duration.

OR

C.  Medically documented history of a chronic organic mental disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychological support, and one of the following:

1.  Repeated episodes of decompensation, each of extended duration; or
2.  A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate.
3.  Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.02(A)(7)(B) and (C) (2007).

In his decision, the ALJ explained that there was no showing of a connection between the presence of a specific organic factor judged to be etiologically related to the abnormal mental state and

26

loss of previously acquired functional abilities.  The ALJ observed that "merely a drop in IQ, in this case from 'average range of ability' in 1989, to 'low average range' as characterized by Ms. Dunlap in 2006 (Exhibits 13E, page 10, & 17F, page 8), is not sufficient to meet this listing.  Therefore, the claimant's condition does not meet or equal Listing 12.02." (Tr. at 24.)

The court proposes that the presiding District Judge find that the ALJ's determination that Claimant does not meet or equal Listing 12.02 is supported by substantial evidence.  The introductory section to Listing 12.02 requires a specific organic factor judged to be etiologically related to the abnormal mental state and loss of previously acquired functional abilities. Claimant has not shown the existence of a specific organic factor that would be related to his lower IQ scores.

Moreover, as to 12.02(A)(7)(B), Claimant has not shown marked restriction in any of the four areas.  Instead, as discussed supra, the ALJ's determination that Claimant has only mild to moderate limitations in the four areas of functioning is supported by substantial evidence.  (Tr. at 23-24.)

While Claimant asserts that he has experienced repeated episodes of decompensation, each of extended duration, as opined by Dr. Lilly, the ALJ rejected such a finding, and his determination is supported by substantial evidence.  (Tr. at 24.)  As the ALJ explained in his decision, the medical evidence shows a psychiatric

27

hospitalization for only four days in 2004, and although the file variously mentions a second, previous psychiatric hospitalization and/or suicide attempt ten or more years ago when Claimant was a child or teenager, "there is no evidence of such in file and the claimant has not been under continuing mental health treatment." (Tr. at 24.)   The ALJ goes on to conclude that a four-day hospitalization does not qualify as "extended duration" under the regulations defined at Section 12.00(C)(4).

Indeed, Section 12.00(C)(4) defines "repeated episodes of decompensation, each of extended duration" as

> three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks.  If you have experienced more frequent episodes of shorter duration or less frequent episodes of longer duration, we must use judgment to determine if the duration and functional effects of the episodes are of equal severity and may be used to substitute for the listed finding in a determination of equivalence.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C)(4) (2007).

The ALJ's finding that Claimant did not have repeated episodes of decompensation, each of extended duration is in keeping with the definition contained in the Listing and is supported by substantial evidence.  Claimant did not meet or equal Listing 12.02(A)(7)(B). It is for these same reasons that Claimant does not meet Listing 12.02(A)(7)(C)(1).

For the reasons set forth above, it is hereby respectfully RECOMMENDED that the presiding District Judge AFFIRM the final decision of the Commissioner and DISMISS this matter from the

28

court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby FILED, and a copy will be submitted to the Honorable John T. Copenhaver, Jr.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have ten days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).  Copies of such objections shall be served on opposing parties, Judge Copenhaver, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

_____February 26, 2009_____
             Date

Mary E. Stanley
United States Magistrate Judge